IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACK W. VAN DOLAH,

    Plaintiff,

v.

JOANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

CV 04-6145-AA

OPINION AND ORDER

Kathryn Tassinari
Attorney At Law
1700 Valley River Road
Eugene, Oregon 97401
    Attorney for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Craig Casey
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Lucille Meis
Special Assistant U.S. Attorney
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Judge:

## INTRODUCTION

Plaintiff Jack Van Dolah brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g)(the Act), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying for the period prior to September 13, 2001, his claim for disability insurance benefits and Supplemental Security Income (SSI) under Title XVI of the Act. For the reasons set forth below, I reverse and remand the decision of the Commissioner.

## PROCEDURAL BACKGROUND

Van Dolah initially filed an application for benefits on February 3, 2000, alleging disability since December 1, 1997, due to a combination of mental and physical impairments related to a stroke. That application was denied initially and upon reconsideration. On February 20, 2002, a hearing was held before an Administrative Law Judge (ALJ). In a decision dated March 22, 2002, the ALJ found Van Dolah was entitled to benefits as of September 13, 2001. On March 23, 2004, the Appeals Council denied Van Dolah's request for review, making the ALJ's decision the final decision of the Commissioner. Van Dolah now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

### DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of

the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under Step Two. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so,

claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under Step Five. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Step Five. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.*

### ALJ's DECISION

At step one, the ALJ found Van Dolah had not engaged in substantial gainful activity since the alleged onset of his

disability on December 1, 1997.

At step two, the ALJ found Van Dolah had medically determinable severe impairments, including an adjustment disorder. At step three, the ALJ found that Van Dolah's impairments did not meet or medically equal the criteria of any listed impairments.

At step four, the ALJ found that Van Dolah retained the residual functional capacity (RFC) to perform sedentary work, limited to non-complex or detailed tasks, with no fast-paced production tasks, no quick decisions required, and allowing for poor performance with the left hand. The ALJ found that Van Dolah was not able to perform his past relevant work.

The ALJ found at step five that, until September 12, 2001, Van Dolah was capable of working at such jobs as a taxi dispatcher, a reception clerk, a registration clerk, or a food order clerk. As a result, he found Van Dolah not disabled within the meaning of the Act for the period of December 1, 1997 to September 12, 2001.

## DISCUSSION

At the time of the hearing, Van Dolah was 50 years old. He graduated from high school and had training in the military and as a police officer. He served as a United States Marine in Vietnam between 1970 and 1972. He has worked as a car salesman, a police officer, and a retail salesman.

Van Dolah contends that the ALJ erred by: (1) finding him less than credible; (2) rejecting the opinion of the treating physician; (3) rejecting the opinion of the examining physician; and (4) failing to meet her burden of proof as to Van Dolah's ability to perform other work in the economy. The Commissioner concedes that she failed adequately to evaluate the opinion of the examining physician, and moves to remand this action for further proceedings. Because the first two issues are dispositive remand for further proceedings is not necessary and the court need not address the latter assertions.

I. Van Dolah's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th Cir. 2001). General findings (e.g., "record

in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms. [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges disability based
> on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...."
> *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988)); Cotton, 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom. *Smolen*, 80 F.3d at 1282 (italics in original).

There is objective medical evidence that Van Dolah suffered migraine headaches, cerebrovascular disease, depression, dementia, Post-Traumatic Stress Disorder, and an adjustment

disorder. Therefore, the ALJ may not simply reject plaintiff's symptom testimony. *Id.* To determine whether plaintiff's symptom testimony is credible the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as a reputation for lying or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen,* 80 F.3d at 1284.

The ALJ stated:

> For the fourth and fifth steps, the claimant's representation of disabling pain, symptoms and limitations are found not credible prior to September 13, 2001. Of record and in testimony, the claimant, who is right handed, and his wife represented that he was unable to work because of having had three "mini" strokes causing a poor left-hand grip such that he dropped items. He had headaches two to three times a week. He was depressed quite often and cried for 30-minute periods several times a week. His left eye wanders. He had a weak left knee.
>
> . . .
>
> The above summarize [sic] medical evidence establishes that the claimant and his wife tenaciously misreported, doctor shopped and attempted to manipulate the record in pursuit of benefits for the claimant. Conspicuously, the claimant as of the emergency room admission in February 1998, had been unemployed since December 1997. Meticulous, extensive clinical, laboratory and radiographic examinations for over four years have repeatedly been normal and revealed no serious physical impairment other than carotid artery pathology, resolved with stenting and anti-coagulant medication. That the claimant coached and played with his daughter's basketball team as well as volunteered as a teacher's aide for her classes belie the degree of neurologic and mental loss alleged by him. For these reasons, the claimant and his witnesses are not

> credible concerning their contentions of his disability
> form [sic] all work prior to September 13, 2001. Tr.
> 23. The extensive medical record indicates that the
> examining and treating physicians have disagreed as to
> the cause of Van Dolah's condition. In February 1998
> he was treated in the emergency room for what appeared
> to be a seizure. Ultimately, the medical community
> determined that the cause of his problem was
> cerebrovascular disease. On February 12, 1998, F. Luke
> Herscher, D.O., assured Van Dolah that he had not had a
> stroke, but in May 1999, Lloyd Taylor, M.D., diagnosed
> a stroke. Tr. 273, 473. M. Sean Green, M.D., a Senior
> Instructor, Department of Neurology, Oregon Health
> Sciences University, interpreted an MRI as suggesting a
> stroke. Tr. 477. Robert Bennett, M.D., a radiologist,
> and C. Stephen Patterson, M.D., disagreed with Dr.
> Green. Tr. 250, 253. In April 1999 a carotid duplex
> showed reversed flow in the vertebral artery and a
> subclavian steal. David S. Weingarten, M.D., Van
> Dolah's treating physician, wrote:
> Picture is now finally coming together. I believe
> patient had (illegible) attack last week & all his
> prior sx [signs] have been from or related to either
> the steal syndrome of Rx [treatment] of his symptoms.

Tr. 402.

In June 1999, Dr. Taylor performed an angioplasty and primary stenting of Van Dolah's left subclavian artery occlusion. Tr. 467. He stated that Van Dolah's posterior fossa symptoms and "possibly even stroke could be related to the artery occlusion." Tr. 474. Subsequently, Dr. Weingarten described Van Dolah as having had a stroke. Tr. 391. William A. McConochie, Ph.D., examined Van Dolah in January 2001 and diagnosed "dementia secondary to strokes." Tr. 487. Robert T. Kurlychek, Ph.D., examined Van Dolah in February 2002 and diagnosed "[d]ementia due to multiple vascular problems." Tr. 668.

That Van Dolah and his wife testified that he had suffered

three mini strokes, or that they characterized his cerebrovascular incidents as such in their testimony or in reciting the medical history to physicians, does not undermine their credibility given the complexity of the diagnoses and the disagreement among the physicians.

The ALJ contends that Van Dolah's credibility is undermined by his unspecified "doctor shopping." Dr. Herscher referred Van Dolah to Dr. Green for a second opinion. Tr. 271. Dr. Weingarten, M.D. referred Van Dolah to Joel R. Daven, M.D. a neurologist. Tr. 351.

The ALJ noted:

> In June 1998, neurologist C. Stephen Patterson, M.D. resigned from care for the claimant. Explaining that the claimant erroneously told another physician of having continious [sic] seizures for three days at emergent care in February 1998, Dr. Patterson stated that the claimant's report was "absolutely nonsense." Dr. Patterson clarified that emergency medical technicians saw the claimant have just one brief seizure on admit. Slowed findings on the first EEG were attributed to the claimant having been asleep.

Tr. 21.

Dr. Patterson wrote:

> I have had the patient's previous CT's and MRI's re-examined by the department of radiology via general conference and there is strong agreement that the 2 little white spots Dr. Green speaks about in the patient's MRI are of absolutely no significance and are well within the normal limits and considered a simple aging phenomenon. In view of the above and in view of the tendency for the patient to seek multiple doctors I am resigning from his care. He is hearing conflicting opinions about what is wrong with him. Dr. Green received some information which was totally erroneous and apparently feels that the patient

11 - OPINION AND ORDER

> was having seizures for an entire 2 or 3 day weekend, non stop. This is absolutely, of course, nonsense. The patient was hallucinating for 3 days in a row and had only a brief seizure on admission to the emergency room and by EMT during the ambulance ride as well. In retrospect I would wonder whether his first EEG, which showed a great deal of slowing and apparent suppression, was not just a low voltage tracing in which the patient happened to be sleeping during the recording. Tr. 253.

The evidence does not support the ALJ's assertion that Van Dolah was "doctor shopping." Dr. Patterson resigned, at least in part, because he disagreed with Dr. Green's diagnosis. Dr. Patterson's comment about Van Dolah seeking multiple doctors may be the result of referrals among the doctors not attributable to Van Dolah himself.

The ALJ's reference to the fact that Van Dolah was unemployed in February 1998 does not constitute evidence that he was not credible. As to basketball, the record indicates that Van Dolah was admitted to the hospital in April 1999 for observation after fainting and striking his head. He reported to the emergency room physician that he "had played basketball yesterday afternoon with his daughter's basketball team. He had a few brief episodes of lightheadedness but nothing serious. He went home, took a shower, and after taking a shower while combing his hair he suddenly lost consciousness without any prodromal symptoms or warning." Tr. 324.

The ALJ failed to offer substantial, clear and convincing evidence that Van Dolah is not credible as to his limitations.

II. <u>Opinion of the Treating Physician</u>

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d)(2). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202, citing *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 C.F.R. 404.1527. *Id.* citing SSR 96-2p. An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

On May 9, 2000, Van Dolah's treating physician, Dr. Weingarten opined that Van Dolah's stroke affected his ability to ambulate, and that he required a care giver to meet his medication needs and ensure safety. Tr. 391. On March 1, 2001, he stated that Van Dolah was unable to work, and was not likely

to return to a condition suitable for work. Tr. 601. On May 3, 2001, Dr. Weingarten again stated that Van Dolah required a care giver. Tr. 522.

The ALJ found Dr. Weingarten's opinion not credible, stating:

> In March 2001, the view by David S. Weingarten, M.D., that the claimant could not sustain work is rejected (citation omitted). First, this is a vocational opinion reserved to the Commissioner. Second, Dr. Weingarten's opinion is not supported by his own or the weight of objective findings from the above physicians who exhaustively evaluated the claimant. Dr. Weingarten's only objective finding for the claimant was his "mild left-sided weakness." Although Dr. Weingarten cited "frequent headaches" for a subjective symptom, the claimant complained of headaches once from December 2000, to August 2001. In August 2001, the claimant denied headaches and on March 27, 2001 Dr. Weingarten noted they were resolved (citation omitted). Additionally Dr. Weingarten cited "memory problems" or "being forgetful," (citation omitted) for a second subjective symptom in May and June 2001; however, in January 2001, the claimant, although alleging dementia, on neuopsychological [sic] formal evaluation and testing, had average intelligence and average memory (citation omitted). Third, Dr. Weingarten depicted the claimant has [sic] being affected in ambulation (citation omitted); yet his treatment record preorts [sic] this as subjective (citation omitted0, the claimant walked normally in all of the above summarized neurologic examinations. Although the doctor felt the claimant's symptoms "could" be caused by his condition his records reflect that "his symptoms overstates what is found on exam;" and he had inconsistent physical findings (citation omitted). For these reasons, Dr. Weingarten's views are rejected.
>
> Tr. 22-23.

Dr. Weingarten's chart notes do not indicate resolution of Van Dolah's headaches. In March 2001, he reported less

frequent headaches using Excedrin and Amerge.  Tr. 537.  In April 2001, he reported that headaches were less frequent.  Tr. 536.  In August and November 2001, he reported his headaches were "controlled."  At the February 2002, hearing Van Dolah testified that he had severe headaches two the three times per week that last for 15 to 30 minutes before he obtains relief with medication.  Tr. 56.

As to memory problems, the ALJ refers to testing performed by Dr. McConochie, which did show average intelligence and memory, but also revealed cognitive deficits consistent with dementia secondary to stroke.  Tr. 486-87.  Dr. McConochie found Van Dolah's visual memory was in the borderline range and "rather weak."  Dr. Kurlychek found that problems with attention and concentration would decrease his ability to encode memory for later retrieval.  Tr. 667.  Dr. Kurlychek opined that Van Dolah's impairments were sufficiently severe that he would be unable to complete a workday at least three or four times a month, and that he was completely disabled by "approx July 2000."  Tr. 661.

As to difficulty with ambulation, Dr. Weingarten's opinion is supported by the opinions of Anthony L. Glassman, M.D., who found a "mild left foot drop," and Joel R. Daven, M.D., who found that Van Dolah circumducted on the left and had dysmetria on heel to shin on the left, indicating an impaired ability to control the distance, speed, and power of his limb.  Tr. 600.

The ALJ failed to offer clear and convincing or specific and legitimate reasons to discredit Dr. Weingarten.

III. <u>Remand For Payment of Benefits is Appropriate</u>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.), *cert. denied,* 531 U.S. 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issue that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178 n.2.

16 - OPINION AND ORDER

The court has determined that the ALJ improperly rejected Dr. Weingarten's testimony as to Van Dolah's ability to sustain work. If credited, Dr. Weingarten's testimony establishes that Van Dolah could not work on a regular and sustained full-time basis as of May 9, 2000 and, therefore, he was disabled. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b) (RFC is ability to work on "regular and continuing basis"). *See also* SSR 96-8p ("regular and continuing basis" is "8 hours a day, for 5 days a week, or an equivalent work schedule"). The court, therefore concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r,* 223 F.3d 968 (9th Cir. 2000). *See also Reddick v. Chater,* 157 F.3d 715, 729 (9th Cir. 1998) ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.")

///
///
///
///
///
///
///
///
///

CONCLUSION

For these reasons, the court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits as of May 9, 2000.

IT IS SO ORDERED.

Dated this 21 day of June 2005.

_____
ANN AIKEN
United States District Judge